**In the Interest of R.T.T., a minor.**

**J.K.T., Petitioner–Respondent,**

v.

**James M. Ringer, Respondent–Appellant.**

**No. 23481.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 13, 2000.

C.H. Parsons, Jr., Dexter, for appellant.

No response for Respondent.

BEFORE: PREWITT, J., CROW, J., and GARRISON, J.

PER CURIAM.

This case concerns the applicability of §§ 455.500–455.538,[1] known as the "Child Protection Orders Act" (the "Act"). J.K.T. ("Father"), as parent and natural guardian of his daughter, R.T.T. ("Daughter"), filed a petition seeking relief under the Act. The trial court entered an Ex Parte Order of Child Protection against James M. Ringer ("Appellant"), and, after a subsequent hearing, entered a Judgment/Full Order of Child Protection. Appellant contests the sufficiency of the petition as well as the evidence.[2] We reverse.

---

1. All references to statutes are to RSMo 1994, unless otherwise indicated.

2. Father has failed to file a brief in connection with this appeal. The failure of a respondent to file a brief on appeal is an imposition on the court and leaves us dependent upon an appellant's presentation and our own research, but because no penalty is imposed by statute or rule, we proceed to determine the case on its merits. *Massey v. Todd*, 962 S.W.2d 949, 950 n. 2 (Mo.App. S.D.1998).

Father, as parent of Daughter, filed a verified Petition for Order of Child Protection against Appellant alleging that he was stalking Daughter. He alleged that Appellant had stalked and inflicted emotional abuse on Daughter by: (1) "child says enticed from home approx. 10 times after family retired ... told child to use WD 40 on door hinges to keep them from squeaking"; (2) "[t]ook child to beer 'joint' Sonny's 1 time"; (3) "child was picked up at Fire Station and taken to [Appellant's] home & was given Zima Beer"; (4) "child was given a mixture containing alcohol at [Appellant's] home on another occasion, # 3 & 4 was told by brother who [Daughter] confided in"; (5) "[Appellant] showed up at two high school speech meets at Bernie, Jan. 13 and Kennett Jan. 20—This was reported by Speech Coach and H.S. Administrator to me"; (6) "[brother] reported [Appellant] driving my new Oldsmobile 2 times or more." He also alleged that an immediate and present danger to Daughter existed because: "[Appellant] entice [sic] & child is ... and child has displayed emotional actions and severe stress at present time. Child has 2½ years [of] school left, and attention to School, Church & Family is needed very much."[3] He requested that, "[p]ursuant to Sections 455.510 to 455.520, RSMo .... that the Court issue an ex parte order of protection: restraining [Appellant] from abusing, threatening to abuse, stalking, molesting or disturbing the peace of [Daughter];" and from "having any contact with [Daughter], except as specifically authorized by the Court."

After the Ex Parte Order of Child Protection was entered, the trial court held a hearing in February 2000, at which Daughter and Father testified. Daughter, who was sixteen, testified that she met Appellant, who was twenty, the prior August and had been with him approximately forty times between then and January, which she said was the last time she had been with him. She said that on some occasions they met at football games; he called her at home once and she called him at his father's home more than forty times; she sneaked out of her parents home at night ten or twelve times to meet Appellant; Appellant had given her beer on two occasions, and that she had gone with him to Sonny's Tavern once to look for someone. She said that their meetings were by mutual agreement, and that he had, upon her request, come to two speech tournaments she was participating in. Daughter said that Appellant had never forced her to do anything she didn't want to do, was a gentleman when he was with her, and that their relationship was purely consensual because she liked him, and in fact had told him that she loved him. She introduced Appellant to other people as her boyfriend and he referred to her as his girlfriend. Before Father filed the petition in this case, Daughter told him that Appellant hadn't done anything wrong to her, and "that it was all as much [her] doings and [sic] as it was his, that [they] were seeing each other."

In response to questions from the court, Daughter testified that she continued to see Appellant after her parents found out and voiced their disapproval, and that knowing she was continuing to see him contrary to her parents' instructions caused her emotional distress. She later said, however, that the emotional distress she was undergoing was overcome by her desire to be with Appellant.

Father testified that he became aware that Daughter was slipping out of the house at night, but didn't know she was seeing Appellant until the previous Christmas. When he learned who she was seeing, he told her that Appellant was too old for her, and that she was not to continue to see him. He admitted that the allegations of his petition were based on things that his family and others had told him.

In entering the Full Order of Protection, the court said that the meetings at the

**3.** Portions of the petition are hand-written and difficult to decipher.

speech meets, the football games, and other social activities appeared to be "constitutionally protected activities for which no relief would lie under the child protection statute." It then expressed concern that Daughter had left her parents' home and rendezvoused with Appellant on more than one occasion after knowing it was against her parents' instructions. It also said:

> The Court is further concerned that [Appellant] made available to her access to beer for consumption by her, although not forcing her to drink it. The Court is further somewhat concerned that he would put her in a circumstance that would allow her to go into Sonny's Tavern, although understanding that nothing untoward took place while she was there. For those reasons, the Court finds that the child protection order should be entered for a period of 180 days, directing that the [Appellant] not stalk or have any contact with [Daughter].

The court then entered Judgment/Full Order of Child Protection in which it found that Father had proven "the allegations of stalking by a preponderance of the evidence," and it ordered that Appellant "shall not stalk, abuse, threaten to abuse, molest or disturb the peace of the minor child, [Daughter], wherever said child may be"; and that he "shall not have any contact" with her.

■■■ As with other court-tried cases, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Reller v. Hamline,* 895 S.W.2d 659, 660 (Mo.App. W.D.1995), citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case. *Wallace v. Van Pelt,* 969 S.W.2d 380, 382 (Mo.App. W.D.1998). The appellate court defers to the trial court's determinations relating to credibility and considers only

those facts and inferences supporting the judgment. *Id.* at 383.

■■■ Initially, we note that § 455.516.1 provides that if the petitioner for a full order of protection has proven the allegations of abuse of a child by a preponderance of the evidence, the court may issue such an order "for a definite period of time, not to exceed one hundred eighty days." In this case, the full order of protection was entered on February 8, 2000, and provided that it was effective until August 5, 2000, unless sooner terminated or extended. The record here does not indicate that it was extended, and, accordingly, it apparently has expired by the lapse of time. Although not raised as an issue on this appeal, the case could be considered moot for that reason. An appellate court, however, may decide an otherwise moot issue if it is of general public interest and importance, recurring in nature, and will otherwise evade appellate review. *State ex rel. Dankelson v. Holt,* 994 S.W.2d 90, 95 (Mo.App. S.D.1999). The applicability of §§ 455.500–455.538 is a matter of general public interest and importance, its applicability under factual situations similar to the one in the instant case may well be of a recurring nature, and the issues raised herein could evade appellate review if the mootness doctrine were invoked because of the necessary lapse of time between the filing of a notice of appeal and when the matter can be decided by that tribunal. Accordingly, we will not invoke the mootness doctrine, but will review this matter on its merits.

■■■ Some of Appellant's contentions will necessarily require that we interpret applicable statutory provisions. Statutory interpretation is a question of law. *Van Pelt,* 969 S.W.2d at 383. "When interpreting a statute, our primary role is to ascertain the intent of the legislature from the language used in the statute and, whenever possible, give effect to that intent." *Id.* The words used in the statute are to be considered in their plain and ordinary meaning. *Id.* "Further insight into the

legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of enactment." *Id.*

■■■ In his first point on appeal, Appellant contends that Father's petition did not state a claim upon which relief could be granted, and that the trial court, therefore, erred in granting the *Ex Parte* Order of Protection. In support, he contends that the petition pleaded no facts that would constitute stalking a child as defined in § 455.501(10), RSMo Cum.Supp.1999, and that the petition showed on its face "that [Daughter] did not meet the definition of a 'victim' set forth in Section 455.501(11), as the Petition did not allege that she was abused by an adult household member." [4]

In *Reller*, 895 S.W.2d at 662, the court held that a petition for an order of child protection must satisfy the jurisdictional requirements of the Act. There, the petitioner had deleted from the petition a necessary allegation, i.e. that the respondent was a present or former household member. [5] The court said that the trial court erred "when it took jurisdiction over Appellant and the matter when, on its face, the Act's jurisdictional requirements simply were not satisfied." *Id.* In so holding, it said that "[t]he jurisdiction of the circuit court is defined by statutory provisions and letter of the law is the limit of its power." *Id.*

Appellant first argues that the first paragraph of the petition alleged that Father is "a parent or guardian of the victim." He contends that under § 455.503.2 there must be a "victim" in order for a petition to be filed by a parent. [6] Since a "victim" is defined in § 455.501(11), RSMo Cum.Supp.1999, as "a child who is alleged to have been abused by an adult household member," and there is no allegation here that Appellant was a *household member,* Appellant argues that the petition did not plead that jurisdictional fact. Accordingly, Appellant effectively argues that relief may be sought under the Act by a parent, guardian, guardian ad litem or court-appointed special advocate only if the respondent is a household member. A natural extension of this argument would result in only a juvenile officer being authorized to seek protection under §§ 455.500–455.538 for a child who is the subject of stalking. We are unable to construe the legislature's intent so narrowly.

Prior to 1995, the Act was available to combat only abuse (physical injury, sexual abuse, or emotional abuse) inflicted on a child by an adult household member. In 1995, however, the Act was amended to permit relief for the "stalking of a child," and the definition of "Stalking" was added. It is clear that the legislature intended to provide a means of seeking relief for the stalking of children by anyone, and that the protection in that regard was not directed against only household members. Thus, § 455.505.1, RSMo Cum.Supp.1999, provides that "[a]n order of protection for a child who has been subject to abuse by a present or former adult household member

---

4. The argument portion of Appellant's brief under the first point also contains other contentions concerning the petition. The issues for decision on appeal, however, are those stated in the points relied on. *Amyx v. Collins,* 914 S.W.2d 370, 373 (Mo.App. S.D. 1996).

5. After *Reller* was decided, § 455.505.1, RSMo Cum.Supp.1999, was amended to authorize relief for a child who has been subject to abuse from a "present or former adult household member," as well as by a "person stalking the child."

6. Section 455.503 provides:

1. A petition for an order of protection for a child shall be filed in the county where the child resides, where the alleged incident of abuse occurred, or where the respondent may be served.
2. Such petition may be filed by any of the following:
(1) a parent or guardian of the victim;
(2) A guardian ad litem or court-appointed special advocate appointed for the victim; or
(3) The juvenile officer.

or person stalking the child" may be sought by the filing of a verified petition.

Section 455.503 was not amended in 1995, but continued to contain the provisions for the filing of a petition under the Act by a parent, guardian, guardian ad litem or court-appointed special advocate of the "victim." Subsection 1 of that section makes it clear, however, that it is referring to a petition for an order of protection for a "child." It would have been clearer if the legislature had substituted "child" for "victim" in § 455.503.2, or had amended the definition of "victim" in § 455.501(11), RSMo Cum.Supp.1999, to include a child who is alleged to have been the subject of "stalking." While it did not do so, it is clear that the legislative intent was to provide a means of judicial protection for children who were allegedly abused by present or former adult household members *or* by a person stalking the child. To hold, as argued by Appellant, that a parent is not authorized to file a petition for protection under the Act as a result of stalking by a person who is not a member of the household would be to effectively dilute the authorization for relief from such conduct. Missouri Courts do not presume that the legislature enacts meaningless provisions. *Parrott v. HQ, Inc.*, 907 S.W.2d 236, 240 (Mo.App. S.D. 1995). "When the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Id.* This portion of Appellant's point is not well taken.

Appellant also contends in this point that although the petition alleged that he was a "person stalking the child," there were no facts stated that would constitute stalking as defined in § 455.501(10), RSMo Cum.Supp.1999. In support of this portion of the point, he argues that the six factual allegations in the petition set out earlier did not "raise any threat of violence to the minor by the Appellant," did not "show an intent of the Appellant to harass the minor," did not "show that the conduct alleged was unwanted or against the will

or desires of the minor or that such conduct caused or was intended to cause substantial emotional distress to the minor."

As will be seen later in this opinion, we have concluded that the evidence at the hearing did not support a finding of abuse by stalking. We are unable to conclude, however, that none of the factual allegations of the petition, if supported by appropriate substantial evidence, would have permitted such a finding. For instance, the petition alleged that Appellant had stalked Daughter and inflicted emotional abuse on her by, among other things, showing up at her speech meets, and "entic[ing]" her from her home. In considering the sufficiency of a petition, the court must construe it liberally and favorably to the petitioner, giving him the benefit of all inferences fairly deducible from the facts stated. *Jaime v. Neurological Hosp. Ass'n of Kansas City*, 488 S.W.2d 641, 643 (Mo.1973). Accordingly, this portion of the first point is without merit.

The first point is denied.

In one of his other points relied on, Appellant contends that there was insufficient evidence to support granting the Full Order of Protection. He argues that there was no substantial evidence to support a finding that Daughter was a victim as defined in the law, nor that Appellant purposely and repeatedly harassed or followed her with the intent of harassing her, which he says are required elements to constitute stalking under § 455.501(10), RSMo Cum.Supp.1999. In support, he contends that the evidence demonstrated that Appellant was not a member of Daughter's household, the relationship between him and Daughter was consensual, that Daughter was neither being stalked or caused any emotional distress by him, Daughter wanted to be with him, he had no intent to harass her, and he did not follow her with the intent of harassing her.

Father alleged that Appellant was stalking Daughter and had inflicted emotional abuse on her. Section 455.505.1, RSMo Cum.Supp.1999, authorizes a petition for an order of protection for a child "who has been subject to abuse by a present or former adult household member or person stalking the child...." Since Appellant was not a household member, an order of protection against him could result only from his having stalked Daughter. "Stalking" is defined in § 455.501(10), RSMo Cum.Supp.1999, as:

"... purposely and repeatedly harassing or following with the intent of harassing a child. As used in this subdivision, **"harassing"** means engaging in a course of conduct directed at a specific child that serves no legitimate purpose, that would cause a reasonable adult to believe the child would suffer substantial emotional distress. As used in this subdivision, **"course of conduct"** means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct."

Pursuant to § 455.516.1, RSMo Cum.Supp. 1999, a full order of protection may be issued if "the petitioner has proved the allegation of abuse of a child by a preponderance of the evidence."

The trial court found that Father's petition was unsubstantiated in many respects in that his testimony was based on hearsay evidence, i.e. what others had told him. The court also said that as to the specific matters alleged such as Appellant going to Daughter's speech meets, meeting her at football games and other social activities, driving her car occasionally, and generally being together with her, all appeared "to be constitutionally protected activities for which no relief would lie under the child protection statute."

The trial court found, however, that the Order of Full Protection was necessitated by evidence that Daughter, after being aware that her parents did not want her to see Appellant, slipped out of the house at night to meet him on more than one occasion; that he made beer available for Daughter's consumption, "although not forcing her to drink it"; and that he put her in a "circumstance that would allow her to go into Sonny's Tavern, although understanding that nothing untoward took place while she was there." The activities upon which the trial court relied in entering the Order of Full Protection do not constitute "stalking" and, therefore, do not provide a basis for the order entered.

Assistance in interpreting "stalking" under § 455.501(10), RSMo Cum.Supp.1999, is gained from *Van Pelt.* While *Van Pelt* involved an interpretation of "stalking" under the portion of Chapter 455 relating to adult abuse, there are significant similarities between it and the definition of that term under § 455.501(10), RSMo Cum. Supp.1999.[7] First, *Van Pelt* held that since the legislature used the term "purposely" in defining "stalking", intent is a necessary element. 969 S.W.2d at 384. The court said that "purposely" is defined as "by design; intentionally; with predetermination," and that the use of the word "purposely" means that it is the intent of the perpetrator that triggers the statute. *Id.*

7. Section 455.010(10), RSMo Cum.Supp. 1999, which relates to adult abuse, defines "stalking" as when an adult purposely and repeatedly harasses or follows with the intent of harassing another adult. Thus that portion of the statute differs from § 455.501(10), RSMo Cum.Supp.1999, only to the extent that it relates to one adult stalking another adult. "[H]arass" under § 455.010(10), RSMo Cum. Supp.1999, relates to a course of conduct directed at a specific *adult* that serves no legitimate purpose, that would cause a reasonable adult to suffer substantial emotional distress, while § 455.501(10), RSMo Cum. Supp.1999, defines it as a course of conduct directed at a specific child that serves no legitimate purpose, that would cause a reasonable adult to believe the child would suffer substantial emotional distress. Otherwise, the definitions of "stalking" are the same for adult abuse as under the Child Protection Orders Act.

In the instant case, therefore, the evidence would need to support a finding that Appellant emotionally abused Daughter by purposely (by design, intentionally, with predetermination) and repeatedly harassing her (engaging in a course of conduct directed at a specific child that serves no legitimate purpose, and that would cause a reasonable adult to believe the child would suffer substantial emotional distress), or following with the intent of harassing her. "[L]egitimate" purpose means one that is "sanctioned by law or custom; lawful; allowed." *Id.* at 385. The term "emotional distress" means a general or specific feeling of mental anguish which must be on-going or occurring repeatedly "based on the conduct bringing it about." *Id.* at 386. By using the term "substantial emotional distress" the legislature intended to require that the offending conduct bring about a significantly higher level of emotional distress than is routinely experienced in daily life, but which need not be so severe as to be uneducable by the average person. *Id.* at 386.

As applied to the facts of this case, the record is devoid of any evidence that Appellant emotionally abused Daughter by purposely harassing her or following her with the intent to harass. The only evidence about Appellant's appearance at football games, speech meets, or other places where he met Daughter was her testimony that it was with her consent, and pursuant to their mutual planning. No evidence indicated that Appellant's actions were with the design, intention or predetermination to engage in a course of conduct directed at Daughter that served no legitimate purpose that would cause a reasonable adult to believe that she would suffer substantial emotional distress. While Daughter testified that she was caused emotional distress by knowing that she was seeing Appellant contrary to her parents' desires, she said that the stress was overcome by her desire to be with him. We do not believe that this indicates that her emotional distress was substantial

or otherwise within the meaning of the statute, or, for that matter that it was brought about by the actions of Appellant. Additionally, while their relationship was one which was not condoned or approved of by her parents, that does not mean that it was not lawful or allowed by the law, and therefore, legitimate for the purposes of §§ 455.500–455.538. Although furnishing her with beer on two occasions cannot be said to be legitimate under these standards, there is no indication in the record that a reasonable adult would believe that it would cause Daughter to suffer substantial emotional distress as a result. The same is true with reference to Appellant taking Daughter into a tavern for a few minutes while he looked for a friend. While furnishing Daughter with beer cannot be condoned, there are other remedies or penalties available to respond to that conduct without applying the provisions of §§ 455.500–455.538 in a manner beyond that which was intended.

There was no evidence that Appellant forced Daughter to slip out of the house and meet him contrary to her parents' desires. Rather, the evidence was that their relationship was consensual, that they met because they liked being together, and that the planning for these meetings was mutual. The approximately forty telephone contacts between the two of them occurred, with one exception, when Daughter called Appellant at his home.

We cannot conclude that the activities relied on by the trial court constituted abuse by stalking as contemplated by the legislature and as embodied in §§ 455.500–455.538. There is no indication that the legislature intended these statutes to be used by a parent as a means of controlling the actions of that parent's child.

Because the judgment must be reversed on the basis indicated, we need not consider Appellant's other points on this appeal. The judgment of the trial court is reversed, and the case is remanded for the

entry of a judgment consistent with this opinion.