Chris LEAVERTON, Petitioner–
Respondent,

v.

David LASICA, Respondent–Appellant.

No. 24769.

Missouri Court of Appeals,
Southern District,
Division Two.

April 16, 2003.

Wayne Gifford, Waynesville, for appellant.

No appearance for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

David Lasica ("Lasica") appeals from a full order of protection entered by the Circuit Court of Pulaski County pursuant to the Adult Abuse Act, §§ 455.010 to 455.085.[1] That order provided that Lasica

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

shall not stalk, abuse, threaten to abuse, molest, or disturb the peace of Chris Leaverton ("Leaverton") at his residence, place of work, or wherever he may be found.

Lasica operated a business out of a property Leaverton leased from Harold Thompson ("Thompson"). Although no formal lease existed between them, Lasica and Leaverton both testified that they had an informal arrangement and part of the arrangement was Lasica's use of the property. Neither Lasica nor Leaverton were residing in the property at the time in question.[2]

On January 5, 2002, Leaverton informed Lasica that he needed to vacate the premises by January 15, 2002. Lasica attempted to call Leaverton six or seven times by phone to request more time to remove his equipment from the property. A few days later, Lasica contacted the owner of the property, Thompson, and inquired about purchasing the property. Thompson informed Lasica the property was not for sale. Lasica then offered to lease the property and stated he was willing to maintain insurance on the property; Thompson again refused. Lasica advised Thompson to contact an attorney and make sure the property was properly insured because Leaverton did not have insurance. During the course of the conversation, Lasica also told Thompson that Leaverton had put him out of business and that he intended to do the same to Leaverton.

Leaverton filed an adult abuse petition in the Circuit Court of Pulaski County on January 11, 2002. That day, the circuit court entered an ex parte order of protection, which forced Lasica to leave the property immediately. A full order of protection was entered after a hearing on January 25, 2002.[3]

Lasica brings two points on appeal.[4] In his first point, Lasica challenges the sufficiency of the evidence to support the issuance of the full order of protection. In his second point, Lasica claims the issuance of the full order of protection constituted a deprivation of property without due process of law. Because of our disposition of Lasica's first point, we do not address Point II.

To summarize his argument in Point I, Lasica alleges the trial court erroneously construed and applied the anti-stalking statute because there was no substantial evidence to support a finding that: (a) his conduct served no legitimate purpose; and (b) his conduct would cause a reasonable person to suffer substantial emotional distress. In essence, Lasica contends Leaverton failed to show his conduct met the definition of "stalking" found in § 455.010(10). We agree.

In reviewing a judge-tried case, we will sustain the trial court's order unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies

---

**2.** Leaverton claimed the property as his legal residence although he testified that the last time he had slept at the property was sometime in June or July of 2001.

**3.** We do not have before us a record that the order of protection was extended and, thus, the case could be considered moot. An appellate court may decide an issue that would otherwise be moot if it is of general public interest and importance, recurring in nature, and will otherwise evade appellate review.

*In re R.T.T.*, 26 S.W.3d 830, 834 (Mo.App. S.D.2000).

**4.** No brief was filed by Leaverton. While there is no penalty for such an omission, we must adjudicate Lasica's claim of error without the benefit of whatever argument, if any, Leaverton could have made in response. *In re Marriage of Brown*, 57 S.W.3d 354, 356 n. 2 (Mo.App. S.D.2001).

the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case. *Wallace v. Van Pelt*, 969 S.W.2d 380, 382 (Mo.App. W.D.1998). We defer to the trial court's determinations of credibility and consider only the facts and inferences which support the judgment. *In re R.T.T.*, 26 S.W.3d 830, 834 (Mo.App. S.D. 2000).

■■■ To determine whether Lasica "stalked" Leaverton, a review of the applicable statutory provisions is required. Statutory interpretation is a question of law. *Id.* The primary objective of statutory interpretation is to ascertain the intent of the legislature from the language of the statute and, whenever possible, to give effect to that intent. *Van Pelt*, 969 S.W.2d at 383.

Section 455.020(1) provides that "[a]ny adult ... who has been the victim of stalking, may seek relief under sections 445.010 to 455.085[.]" Stalking is defined in § 455.010(10):

> "**Stalking**" is when an adult purposely and repeatedly harasses or follows with the intent of harassing another adult. As used in this subdivision, "**harasses**" means to engage in a course of conduct directed at a specific adult that serves no legitimate purpose, that would cause a reasonable adult to suffer substantial emotional distress. As used in this subdivision, "**course of conduct**" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "**course of conduct**".

In a well-reasoned and thorough opinion, the Western District of this court in *Wallace v. Van Pelt* extensively examined the history and language of the Adult Abuse Act. We concur with and adopt much of that analysis in this opinion.

■■■ "Purposely" is defined as "by design; intentionally; with predetermination." *Van Pelt* at 384 (*quoting Webster's New Twentieth Century Dictionary* 1465 (2d ed.1979)). Therefore, "intent is a necessary element of stalking under the statute." *Id.* "By using the word 'purposely,' the legislature has provided that it is the intent of the perpetrator that triggers the statute." *Id.*

The term "legitimate," as used in the subsection, means "sanctioned by law or custom; lawful; allowed." *Id.* at 385 (*quoting Webster's New Twentieth Century Dictionary* 1035 (2d ed.1979)). Therefore, to find a "course of conduct" to have "no legitimate purpose," the court must find that the actions were not "sanctioned by law or custom; lawful; allowed." *Id.* at 385.

■■■ To paraphrase, if the court finds the conduct served no legitimate purpose, the court must then determine if the conduct would cause a reasonable person to suffer substantial emotional distress. The use of the phrase "substantial emotional distress," means that "the legislature intended to require that the offending conduct bring about a significantly higher level of emotional distress than is routinely experienced in daily life, but which need not be so severe as to be [unendurable] by the average person." *Id.* at 386. "Conduct that merely causes alarm or distress to the victim but which would not cause substantial emotional distress to a reasonable person does not qualify as harassment." *Id.*

■■■ In the present case, the trial court identified as the only bases for the issuance of the order of protection the repeated phone calls to Leaverton and the

veiled threat to Thompson. We find that in a landlord-tenant situation, repeated phone calls regarding the date the tenant is to vacate the premises do not rise to the level of stalking as contemplated by the Adult Abuse Act.

After being told he had only days to vacate the premises he had been leasing, Lasica tried to call Leaverton approximately six or seven times. In the context of the situation, the evidence indicates Lasica had the legitimate purpose of requesting more time to move out when attempting to call Leaverton. Even if this were not so, we cannot interpret the phone calls to be a purposeful attempt to cause Leaverton substantial emotional distress; nor do we believe the repeated phone calls would cause such distress in a reasonable person.[5]

Similarly, we cannot conclude that Lasica's comment to Thompson that he should "get some insurance" on the property would cause substantial emotional distress in a reasonable person. According to Thompson, Lasica offered to buy the property. When Thompson refused to sell, Lasica informed Thompson that if anything happened on the property, Thompson could be liable if Leaverton did not have insurance. Although Thompson testified he interpreted Lasica's comments to be threats,[6] we cannot conclude that the vague threats in the given context are the type that would instill substantial emotional distress in a reasonable person as contemplated by the Adult Abuse Act.

Much like the *Van Pelt* court concluded that the Adult Abuse Act was not intended "to be a panacea for the minor arguments that frequently occur between neighbors[,]" we find that neither was it intended to be a solution for disputes arising between landlords and tenants. *Id.* at 386.

We feel this is an appropriate time to reiterate the warning given in *Van Pelt:*

> The potential for abuse of the stalking provision of the Adult Abuse Act is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having been found to be a stalker. Moreover, such a finding could lead to criminal prosecution for violation of the criminal stalking statute, § 565.225. Thus, it is incumbent that the trial courts exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act and in making sure that sufficient credible evidence exists to support all elements of the statute before entering a protective order.

*Id.* at 387.

The judgment is reversed and the cause is remanded to the trial court with instructions to vacate the full order of protection.

PREWITT, P.J., and SHRUM, J., concur.

---

5. While not conclusive as to the reasonable person, it is noteworthy that Leaverton testified he was not frightened by the phone calls. Leaverton testified that he did not become frightened until Thompson informed him of the phone call Thompson received from Lasica.

6. Thompson was not a party to the proceeding, nor does it appear from the record that Thompson filed for an order of protection against Lasica.