**Joanie BINGGELI, Respondent,**

v.

**Deborah A. HAMMOND, Appellant.**

**No. WD 70903.**

Missouri Court of Appeals,
Western District.

Jan. 19, 2010.

---

James D. Boggs and W. Christian Boggs, Kansas City, MO, for appellant.

Joanie Binggeli, Parkville, MO, Respondent pro se.

Before Division III: JAMES E. WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

Deborah Hammond (Hammond) appeals the trial court's judgment granting an order of protection prohibiting Hammond from stalking or abusing Joanie Binggeli (Binggeli). On appeal, Hammond presents one point in which she claims that the trial court erred in granting the full order of protection because Binggeli failed to present any evidence that Hammond's conduct caused Binggeli to have a fear of physical harm. We reverse.

Binggeli and her husband formerly lived next door to Hammond and her boyfriend. In 2004, Binggeli's husband was incarcerated and Binggeli struggled financially. In an attempt to help Binggeli, Hammond assisted her in finding employment performing cleaning services for a local business. Hammond also hired Binggeli to clean Hammond's house.

In 2007, Hammond discovered that Binggeli was sending inappropriate text messages and making inappropriate phone calls to Hammond's boyfriend. Hammond terminated Binggeli's cleaning services for her residence because of Binggeli's conduct. Binggeli found alternative employment at St. Luke's Hospital.

In August 2008, Hammond discovered that Binggeli was having a sexual relationship with her boyfriend. Hammond told Binggeli that she knew Binggeli's employer and that she was going to attempt to get her fired.

Over the next few months, Hammond called Binggeli's employer repeatedly in an attempt to get her fired from her job. Hammond drove by Binggeli's house on a few occasions. Hammond and Binggeli also ran into each other at a few public parking lots. On a few occasions, Binggeli initiated communications with Hammond through text messages. Based on these

interactions, Hammond requested her attorney to send Binggeli a cease-and-desist letter, advising Binggeli to stop communicating with her. After she received this letter, Binggeli filed a petition for an order of protection.

The trial court held a hearing on Binggeli's petition on April 7, 2009. At the hearing, both Binggeli and Hammond testified. At the close of the evidence, the trial court entered two full orders of protection,[1] which prohibited Hammond and Binggeli from stalking each other. This appeal follows. On appeal, Hammond presents one point in which she claims that the trial court erred in granting a full order of protection against her because she argues that Binggeli failed to present any evidence that Hammond's conduct caused Binggeli to have any fear of physical harm. Hammond argues that the evidence at trial established only that her conduct caused Binggeli apprehension about the possibility of losing her job at St. Luke's. We agree.

Our review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schwalm v. Schwalm*, 217 S.W.3d 335, 336 (Mo.App. E.D.2007). We, therefore, will uphold the trial court's judgment as long as it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. *Id.* In reviewing the trial court's judgment, we consider the evidence in a light most favorable to the judgment and defer to the trial court's determination of credibility. *Id.*

Any adult who has been the victim of stalking may request an order of protection by filing a petition under the Adult Abuse Act. § 455.020.1.[2] Section 455.020.1 states that "[a]ny adult who has been subject to abuse by a present or former adult family or household member, *or who has been the victim of stalking*, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such abuse or stalking by the respondent." The General Assembly defines stalking as "when an adult purposely and repeatedly engages in an unwanted course of conduct *that causes alarm* to another person when it is reasonable in that person's situation to have been alarmed by the conduct." § 455.010(10) (emphasis added). The General Assembly also provides definitions for the terms "course of conduct," "repeated," and "alarm":

(a) "Course of conduct" means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact;

(b) "Repeated" means two or more incidents evidencing a continuity of purpose; and

(c) **"Alarm" means to cause fear of danger of *physical* harm.**[3]

---

1. Apparently, at some point in time, Hammond also filed a separate petition for order of protection against Binggeli. The trial court did not consolidate the two cases but did hear evidence simultaneously on both of the pending petitions for orders of protection. The separate judgment of the trial court entering a full order of protection against Binggeli is just that, a separate judgment. It is not presently before us and we do not address the merits of the trial court's judgment entering a full order of protection in favor of Hammond and against Binggeli.

2. Unless otherwise indicated, all statutory references are to RSMo 2000.

3. We note that "fear of danger of physical harm" would appear to be synonymous with "fear of physical harm" since "physical harm" is, in fact, dangerous. However, the

§ 455.010(10)(a)–(c) (emphasis added). Thus, pursuant to Missouri's Adult Abuse Act, a petitioner seeking protection from stalking by another must present evidence establishing the evidentiary prerequisites for entitlement to such an order of protection, namely: (1) that the respondent engaged in a pattern of conduct of at least two or more incidents, (2) that served no legitimate purpose, (3) *that caused the petitioner a fear of danger of physical harm,* and (4) that it was reasonable for petitioner to have a fear of danger of physical harm. The petitioner has the burden of proof under the statute and must establish the allegation of stalking by a preponderance of the evidence. § 455.040.1.

■ The Adult Abuse Act, however, was not intended to be a solution for minor arguments between adults. *Leaverton v. Lasica,* 101 S.W.3d 908, 912 (Mo.App. S.D. 2003). Prior courts have warned us that there is great potential for adults to abuse the stalking provision of the Adult Abuse Act:

> The potential for abuse of the stalking provision of the Adult Abuse Act is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having been found to be a stalker. Moreover, such a finding could lead to criminal prosecution for violation of the criminal stalking statute, § 565.225. Thus, it is incumbent that the trial courts exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act and in making sure that sufficient credible evidence exists to support all elements of the statute before entering a protective order.

*Id.* (quoting *Wallace v. Van Pelt,* 969 S.W.2d 380, 387 (Mo.App. W.D.1998)); *see also Schwalm,* 217 S.W.3d at 337.

superfluous statutory verbiage is of no conse-

■ In a light most favorable to the trial court's judgment, the record at trial establishes that Hammond engaged in a pattern of conduct of far more than two incidents in which her conduct served no legitimate purpose. Instead, Hammond's conduct was designed to harass Binggeli for the embarrassment and disappointment that Binggeli caused Hammond over the extra-marital affair Binggeli engaged in with Hammond's boyfriend. As Binggeli admitted at trial, "[Hammond] has every right . . . to be angry and hate me." However, the crux of Binggeli's plea to the trial court is best summed up by her testimony immediately following the previous comment: "But, I do not feel like this should affect my work."

"This," the extra-marital affair, turned good friends into enemies and caused grown adults to behave immaturely. However, while patently immature, none of the acts Binggeli complained of caused Binggeli any fear of danger of physical harm, reasonable or otherwise.

At trial, Binggeli never testified Hammond's conduct caused her any fear of danger of physical harm. Rather, Binggeli testified that Hammond did not threaten to cause her physical harm and, instead, threatened only to try to get her terminated from her place of employment:

> Q. When she entered your home on August 16th was she invited or was she uninvited?

> A. No. No, she was not invited. The door was unlocked and she had come in the house and came upstairs. There was no physical threats or anything like that. It's just the threat that, "I'm going to go to your boss on Monday and tell him that I want you fired."

> . . . .

quence to our discussion herein.

Q. You say that she's harassed you on March 23, 2009. What happened?

A. On March 23rd—Actually, it's been going on for quite some time but on March 23rd was actually one of the particular dates that I came back from my vacation and found out that she had been in the—This is maybe like the ninth or tenth time that she [had] been in communication with my employer at St. Luke's Hospital trying to get me terminated from my job.

. . . .

Q. What reason does she have to contact your employer?

A. What it really comes down to is I had a brief relationship with her boyfriend back in 2008, and at that point she had actually entered my premises into my dwelling and had told me that at that point she was going to see that I lost my job . . .

. . . .

Q. Anything else you want to tell me [trial court] I haven't asked about?

A. I just—I want the harassment, more than anything, to stop at my work because [as] I['ve] said there [are] so many people that are being involved in it now.

Binggeli's frustration with Hammond that Hammond's conduct might cause her to lose her job was not sufficient evidence to justify an order of protection under Missouri's Adult Abuse Act, because Hammond's conduct, by Binggeli's admission, did not cause Binggeli to be in fear of danger of physical harm. *See George v. McLuckie*, 227 S.W.3d 503, 508–09 (Mo. App. W.D.2007) (trial court erred in granting full order of protection on the basis that the evidence established that person had sent other person harassing text messages and had driven by her house because there was no evidence that her conduct had caused fear of physical harm); *Clark v. Wuebbeling*, 217 S.W.3d 352, 354–55 (Mo.App. E.D.2007) (no evidence of fear of physical harm because evidence established only that husband's contact with wife was limited to "passing words" during phone calls or at their children's events); *Schwalm*, 217 S.W.3d at 337 (evidence insufficient because it established only that wife had knocked on husband's door a few times but left premises peacefully, had followed him to work on another occasion, and had approached him at a gas station); *Leaverton*, 101 S.W.3d at 911–12 (tenant's action of repeated phone calls to landlord regarding the date that he was going to vacate the property did not cause fear of physical harm).

While there may be other civil forums in which Binggeli may be entitled to seek civil redress, the forum of Missouri's Adult Abuse Act is not the correct civil forum for her dispute with Hammond. Because Binggeli failed to adduce evidence that Hammond caused her fear of danger of physical harm, Binggeli failed to establish all of the elements necessary to prove stalking as contemplated by Missouri's Adult Abuse Act. The trial court erred in entering a full order of protection against Hammond. We, therefore, reverse the trial court's judgment entering a full order of protection against Hammond.

JAMES E. WELSH, Presiding Judge, and KAREN KING MITCHELL, Judge, concur.