**I.L.L., Respondent,**

v.

**T.L.R., Appellant.**

**WD 80513**

Missouri Court of Appeals,
Western District.

Opinion filed: December 19, 2017

·I.L.L., Respondent Pro-se.

Michael S. Shipley, Liberty, for Appellant.

Before Division Four: Mark D. Pfeiffer, Chief Judge, Lisa White Hardwick, Judge and Edward R. Ardini, Jr., Judge

## EDWARD R. ARDINI, JR., JUDGE

T.L.R. ("Appellant") appeals the Circuit Court's entry of a full order of protection in favor of I.L.L. ("Petitioner"). Appellant argues that the trial court's decision was not supported by substantial evidence and is against the weight of the evidence. We reverse.

### Factual and Procedural Background

Petitioner filed a Petition for Order of Protection on January 13, 2017. The Petition alleged that Appellant had stalked and harassed Petitioner through the sending of threatening emails and by contacting her employer in an effort to get her fired. A hearing on the Petition was held at which both parties testified. The transcript for the hearing shows that it was relatively informal. Both sides were questioned by the trial court and allowed to establish their respective characterizations of the pertinent events. First, the trial court questioned Petitioner, who explained that she and Appellant had previously been co-workers, though she admitted that she had not known Appellant personally while they were working together. Petitioner indicated that she had only recently become acquainted with Appellant after Appellant began dating the father of her son. She further testified that she filed the Petition on the advice of her employer's human resources department after Appellant contacted her employer with "false accusations" in an attempt to get her fired[1] and sent her several emails that were described in the Petition as "threatening."[2] At the close of her initial testimony, the trial court asked Petitioner directly if she felt that she was being harassed to which she replied, "Uh-huh. Because—Yes. Due to I guess my son's father lying to her about the relationship, which I don't feel like she has anything to do with."

The trial court then directed its inquiry to Appellant. Appellant claimed that she

---

1. There is no evidence in the record concerning the exact statements Appellant made to Petitioner's employer. During the hearing, Petitioner testified generally that Appellant had told Petitioner's employer that Petitioner had been harassing Appellant. This testimony was based on information she claims to have received from her employer's human resources department.

2. The emails in question were neither attached to the Petition nor offered during the hearing and hence are not part of the record before us on appeal. In addition, Petitioner offered no testimony during the hearing indicating what threats, overt or implied, were made in these emails.

had first contacted Petitioner over a year earlier in an attempt to determine if Appellant's boyfriend was the father of Petitioner's child. She further stated that when she first posed this question, Petitioner flatly denied any previous relationship with Appellant's boyfriend at which point Appellant considered the matter closed. However, Appellant informed the trial court that, approximately a month before the filing of this action, Petitioner contacted her by email in order to recant her previous denial and admit that Appellant's boyfriend was the father of her child. According to Appellant, this led to a series of email exchanges between her and Petitioner regarding why Petitioner had suddenly changed her position. Appellant described this exchange as mostly cordial and further stated that she believed that the matter had been resolved via these emails. When specifically asked by the trial court whether she had any interest in continuing her dialogue with Petitioner, Appellant replied that she had not spoken to her in several weeks and had no interest in contacting her in the future.[3]

At the close of the evidence, the trial court indicated that it intended to sustain the Petition and enter the requested Order of Protection. Counsel for Appellant argued that there was insufficient evidence to support such a conclusion as there was no evidence that Petitioner had been placed in fear of physical harm. In response, the trial court asked Petitioner if she was "concerned for [her] safety as a result of these circumstances." Petitioner responded:

> I personally was because I have a son, and I work late and I think I saw her vehicle near my job. And then when she contacted me—I have a baby I have to protect, and she keeps mentioning my son in these emails and the paternity of him. That's none of her business. And so, yes, I do not want her to contact me anymore. And being that she tried to say I was harassing her at my job and make false accusations and try to get me fired, no, I don't—I want that in place.

The court thereafter entered its judgment granting a full order of protection. Appellant now appeals.

## Discussion

Appellant's first point on appeal argues that the trial court's entry of an Order of Protection was not supported by substantial evidence and was against the weight of the evidence.[4] Specifically, she argues that there was no evidence adduced at the hearing to show that she purposely engaged in a course of conduct that caused alarm to Petitioner. Her second point on appeal argues that the provision of the Order of Protection prohibiting her from possessing, shipping, transporting, and/or receiving any firearms for the duration of the order in particular is not supported by substantial evidence and is against the weight of the evidence because there was no evidence adduced at the hearing establishing that Appellant is a spouse, former spouse, present or former cohabitant, or

3. Appellant admitted to contacting Petitioner's employer, but insisted that she did so only because Petitioner had "looked up [her] address on Case.net" and she wanted Petitioner's employer to prevent Petitioner from further accessing her personal information.

4. Appellant's first point on appeal improperly combines "an against the weight of the evidence" claim with a "not supported by sub- stantial evidence" claim. These are considered distinct legal claims and hence must be raised in separate points relied on. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 n. 10 (Mo. banc 2014) (citing Rule 84.04). Nevertheless, we will gratuitously undertake to address the merits of Appellant's claim. *See Ivie v. Smith*, 439 S.W.3d 189, 199 n. 11 (Mo. banc 2014).

has a child in common with Petitioner as required by statute.

■ "Our review of a trial court's decision in an Adult Abuse Act case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Smith v. McAdams*, 454 S.W.3d 418, 420–21 (Mo. App. W.D. 2015). "We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (quoting *McAlister v. Strohmeyer*, 395 S.W.3d 546, 549–50 (Mo. App. W.D. 2013)). "[W]e consider the evidence in a light most favorable to the judgment and defer to the trial court's determination of credibility." *Binggeli v. Hammond*, 300 S.W.3d 621, 623 (Mo. App. W.D. 2010).

■ Section 455.020.1 of the Adult Abuse Act permits "[a]ny person who has been ... the victim of stalking ... [to] seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such ... stalking ... by the respondent." [5] Section 455.010(12) defines stalking as "when any person purposely engages in an unwanted course of conduct that causes alarm to another person, or a person who resides together in the same household with the person seeking the order of protection when it is reasonable in that person's situation to have been alarmed by the conduct." The same statute also defines a "course of conduct" as "a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose" and the term "alarm" as "to cause fear of danger of *physical harm*." (emphasis added). Thus, in order to be entitled to an order of protection on the basis of stalking under Missouri's Adult Abuse Act, an individual must establish: "(1) that the respondent

engaged in a pattern of conduct of at least two or more incidents, (2) that served no legitimate purpose, (3) that caused the petitioner *a fear of danger of physical harm*, and (4) that it was *reasonable for petitioner to have a fear of danger of physical harm*." *Binggeli*, 300 S.W.3d at 624 (emphasis added). "The petitioner has the burden of proof under the statute and must establish the allegation of stalking by a preponderance of the evidence." *Id.*

■ In this case, we find Petitioner has failed to establish that she was "alarmed" by Appellant as defined by the Adult Abuse Act. Stated more specifically, even when viewed in a light most favorable to the judgment, Petitioner has failed to present sufficient evidence that she was ever placed in fear of physical harm by Appellant. The Petition alleges two forms of harassment. The first is the "threatening emails" sent to Petitioner's personal email account by Appellant in early January of 2017. However, the testimony of the parties indicates that Petitioner, not Appellant, initiated this email exchange. More importantly, the emails were not presented as evidence during the hearing and Petitioner did not offer any testimony regarding what threats were made by Appellant in the emails or otherwise describe how the emails were threatening. Overall, the evidence adduced at the hearing regarding these emails, including Petitioner's own testimony, supports only the conclusion that she found them annoying (primarily because she didn't feel the issue discussed to be any of Appellant's business) and wished for them to cease (notwithstanding the email exchange was initiated by Petitioner). This is not sufficient to support the granting of an Order of Protection. *Lawyer v. Fino*, 459 S.W.3d 528, 533 (Mo. App. S.D. 2015) (petitioner failed to establish

5. All statutory citations are to the Revised Statutes of Missouri, 2000, as supplemented.

sufficient evidence to support granting of order of protection as none of the text messages that he claimed to be "threats" involved or even implied a threat of physical harm.); *George v. McLuckie*, 227 S.W.3d 503, 508–510 (Mo. App. W.D. 2007) (trial court erred in granting full order of protection as evidence only established that a person had sent petitioner harassing text messages and had driven by her house and there was no evidence that the individual's conduct had caused petitioner fear of physical harm).

■ The second form of harassment complained of by Petitioner related to Appellant's alleged efforts to have her terminated from her employment. Again, even if we disregard the competing explanations for Appellant's conduct and consider the evidence in a light most favorable to the judgment, as required by our standard of review, there is no evidence that Appellant's actions placed Petitioner in fear of physical harm. This Court has previously considered and rejected the argument that the efforts by one individual to cause another to lose their job can, by itself, justify the granting of a full Order of Protection. *Binggeli*, 300 S.W.3d at 625 (trial court erred in granting full order of protection based on allegations that a person had repeatedly contacted petitioner's employer attempting to have them fired because petitioner had never been placed in fear of danger of physical harm.). Appellant's efforts to have Petitioner fired, assuming Petitioner's allegations are true, may reasonably have been considered annoying, frustrating, or insulting, to Petitioner; but it cannot be said that Appellant threatened

Petitioner or otherwise committed an act from which Petitioner might have reasonably feared physical harm.[6] Therefore, it does not constitute stalking as defined by Section 455.010(12).

■ "The Adult Abuse Act ... was not intended to be a solution for minor arguments between adults." *Binggeli*, 300 S.W.3d at 624 (quoting *Leaverton v. Lasica*, 101 S.W.3d 908, 912 (Mo. App. S.D. 2003)). We have previously discussed the need for vigilance by trial courts concerning the Adult Abuse Act's stalking provision:

> The potential for abuse of the stalking provision of the Adult Abuse Act is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having been found to be a stalker. Moreover, such a finding could lead to criminal prosecution for violation of the criminal stalking statute, § 565.225. Thus, it is incumbent that the trial courts exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act and in making sure that sufficient credible evidence exists to support all elements of the statute before entering a protective order.

*Id.* (quoting *Leaverton*, 101 S.W.3d at 912). In this case, Petitioner has failed to meet her burden to establish such evidence. Even when questioned directly regarding whether she felt concerned for her safety, Petitioner's response was oblique and merely reiterated her desire for Appellant to cease contacting her and her employer.[7]

---

**6.** As with the email exchange, there was no evidence presented regarding the exact nature of the statements made by Appellant to Petitioner's employer. Instead, Petitioner merely testified that Appellant had made "false accusations" to her employer's human resources department, claiming that Petitioner had been

harassing Appellant, based on the information supplied to her by the human resources department.

**7.** To the extent that Petitioner responded to the question in the affirmative, we note that such an answer is not itself sufficient to justify

This was simply not enough to support the trial court's decision to grant Petitioner's requested Order of Protection. Based on the record before us, we conclude that the trial court erred in entering a full Order of Protection against Appellant.[8] We therefore reverse the trial court's judgment. Because we determine that Appellant's first point on appeal merits reversal, we need not address her remaining point.

## Conclusion

The judgment of the trial court is reversed and the cause is dismissed with prejudice.

All concur.

---

the granting of a protective order. *Schwalm v. Schwalm*, 217 S.W.3d 335, 337 (Mo. App. E.D. 2007) ("While the statutory definition of stalking requires alarm, a plaintiff is required to do more than simply assert a bare answer of "yes" when asked if he was alarmed.").

8. Our reading of the transcript of the hearing leads us to conclude that the trial court did not consider either party in this case to be truly at fault and was instead attempting to

prevent future issues between the parties. To that end, the trial court's efforts in this matter are understandable. Nevertheless, in order to justify the granting of an Order of Protection, the evidence presented must meet the statutory standard. In this case, it did not. While we appreciate the trial court's endeavor to resolve this issue, we must conclude that a protective order was not the proper remedy.