

# Missouri Court of Appeals
## Southern District
### Division One

LINDSAY EMMA BURKE, )
 )
 Petitioner-Respondent, )
 )
vs. ) No. SD35833
 )
HUBERT LLOYD TYSON DELAY III, ) Filed August 5, 2019
 )
 Respondent-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF MISSISSIPPI COUNTY

Honorable D. Blake Pearson

AFFIRMED

Hubert Lloyd Tyson DeLay III appeals the trial court's judgment of full order of protection entered against him, *see* section 455.040,[1] claiming that the trial court's finding that he engaged in domestic violence, stalking, or sexual assault against Lindsay Emma Burke was not supported by substantial evidence. We disagree and affirm the trial court's judgment.

### Standard of Review

Our review of the entry of a full order of protection under the Adult Abuse Act

is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We, therefore, will uphold the trial court's judgment as long as it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. In reviewing the trial court's judgment, we

---

[1] All statutory references are to RSMo 2016.

1

consider the evidence in a light most favorable to the judgment and defer to the trial court's determination of credibility.

***Binggeli v. Hammond***, 300 S.W.3d 621, 623 (Mo.App. 2010) (internal citations omitted). "The trial judge is in the best position to gauge the credibility of the witnesses and to determine the existence of any reasonable apprehension of abuse that a petitioner may harbor; conversely, the judge can determine whether a given respondent appears capable of the feared abuse." ***Parkhurst v. Parkhurst***, 793 S.W.2d 634, 636 (Mo.App. 1990).

Trial courts are free to believe any, all, or none of the evidence presented at trial. ***Ivie v. Smith***, 439 S.W.3d 189, 200 (Mo. banc 2014). Appellate courts, therefore, in the absence of specific findings of fact otherwise, accept as true the evidence and inferences favorable to the judgment and disregard all evidence and inferences contrary to the judgement. ***Id.***; Rule 73.01(c).[2]

## Factual and Procedural Background

DeLay and Burke are former spouses, who had a child ("Child") together, and separated after fourteen months of marriage. DeLay's abusive and violent behaviors toward Burke lead to the separation. Burke filed for divorce and, ultimately, was awarded sole legal and physical custody of Child. Thereafter, a criminal case was filed against DeLay involving charges of aggravated stalking of Burke and violation of a protection order in favor of Burke. That criminal case was pending during the events leading to the entry of the trial court's judgment in this case. As part of the criminal case, DeLay secured pre-trial release by bond that ordered him to not engage in any contact with Burke.

---

[2] All rule references are to Missouri Court Rules (2018).
No party requested findings of fact on any controverted material fact issues, as provided under Rule 73.01(c). The trial court made no factual findings in its judgment contrary to the result reached in the judgment.

On August 19, 2018, Burke's mother (individually referred to as "Mother" and, with Burke's father, collectively as "Mother and Father") received a telephone call from DeLay. Mother described the ensuing conversation in the following manner:

> When I answered the phone, his first words were, "Ms. Carol Jane, this is Tyson DeLay. Please don't hang up." And I was completely stunned because I haven't heard from him in many years because the relationship has been so tumultuous. And he asked if I would be willing to talk to my husband, Stephen, and he would like to tell us how he always had done the wrong thing; Lindsay had always the correct thing, and -- that Lindsay had done the correct thing, and that he just wanted to get that off his chest. There would be things that we were aware of that he had done wrong, and then there would be some things that we probably did not know. Twice he told me he was sober, but he was not stable. He stated that his parents had had to try to have him committed, and that the doctor deemed him competent and that that didn't go through. And that's when he, on one of those occasions said, "I am sober, but I am not stable."

Mother recounted that, during the telephone conversation, she felt "so nervous and uncertain and scared[.]" Having observed DeLay's "mental instability through these years," the one thing Mother learned was "that can flip, he's dangerous." Mother understood DeLay's statements that he's not stable as a threat intended for Burke and, thereafter, brought the matter to Burke's attention.

Burke and her family regularly attend Sunday service at Charleston United Methodist Church ("the church"). On September 2, 2018, prior to the start of Sunday service, Mother and Father were seated in the church where their family usually sits. Unbeknownst to Mother and Father, DeLay entered the church and seated himself behind them. Burke and Child then arrived. Burke noticed DeLay sitting behind Mother and Father and immediately sought help from the local police chief who was seated nearby. The local police chief, aware that DeLay was not allowed to have contact with Burke, went over to DeLay, informed him that he would have to leave, and escorted him outside. DeLay does not regularly attend services at the church and his presence there was unusual. Before the September 2, 2018 encounter, Burke had not seen DeLay

3

at the church since Child's baptism more than six years earlier. On September 2, 2018, Delay resided in Sikeston, not Charleston where Burke then resided.

According to Burke, she "felt fear and panic" and "felt extremely intimidated and afraid" upon seeing Delay in the church. Asked why the sight of DeLay scared her, Burke explained:

> Tyson has repeatedly said that he was going to murder me or hire someone to murder me. So, immediately, I was afraid. He had also called my mother and told her how unstable he was prior to that, you know. So, of course, my entire family is afraid of him. And there's a criminal matter pending where he's charged with aggravated stalking and violating a different protection order. He has tried to contact me repeatedly, even though he knows that I do not want that[.]

Burke thereafter filed the petition for an order of protection in this case alleging that DeLay "caused or attempted to cause me physical harm[,]" "placed or attempted to place me in apprehension of immediate physical harm[,]" "coerced me[,]" "stalked me[,]" "harassed me[,]" "followed me from place to place[,]" and "threatened to do any of the above[.]"

Following a hearing, the trial court entered its judgment finding "that [Burke] has proven allegations of domestic violence, stalking, and/or sexual assault against [DeLay] and [DeLay] cannot show that his[] actions alleged to constitute abuse were otherwise justified under the law." DeLay appeals.

## Discussion

In his sole point relied on, DeLay claims that

> [t]he trial court erred in entering the Full Order of Protection against [DeLay] because there was not substantial evidence adduced to support [Burke]'s claims that [DeLay]'s conduct on August 19, 2018, and September 2, 2018, constituted an act of domestic violence or stalking, in that it is clear from the evidence received that [DeLay]'s conduct was neither purposely intended to place [Burke] in fear of harm, nor likely to cause a reasonable adult to suffer substantial emotional distress, nor a course of conduct that served no legitimate purpose.

Because there was substantial evidence that he harassed Burke and therefore committed an act of domestic violence, DeLay's claim is without merit.

4

Under the Adult Abuse Act, a court may issue a full order of protection upon a showing by the petitioner of "domestic violence, stalking, or sexual assault[.]" Section 455.040. An allegation of "domestic violence" includes, as relevant here, "abuse" committed by a former spouse. Section 455.010(5) & (7). "Harassment," a qualifying act of "abuse," is defined as

> engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to [the petitioner] and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable [person] to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner or child.

Section 455.010(1)(d). The phrase "substantial emotional distress" means "the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living." *Wallace v. Van Pelt*, 969 S.W.2d 380, 384 (Mo.App. 1998). A "course of conduct" involving more than one incident causing substantial emotional distress has "no legitimate purpose" when the actions were not sanctioned by law or custom, were not lawful, or allowed. *Id.* at 385.

The evidence reflects that DeLay has a history of insobriety, mental instability, abusive and violent behaviors toward Burke, and making death threats against Burke. Criminal charges against DeLay involving Burke and in which he was ordered by the court not to have contact with Burke were pending when DeLay placed a telephone call to Mother with whom he had not spoken with in many years due to his tumultuous relationship with Burke. In that call, DeLay repeatedly asserted, among other things, that he was not stable. From these facts, the trial court could reasonably infer, as Mother did, that DeLay's statements of instability were a threat directed to Burke and was made indirectly to Mother for the illegitimate purpose of inducing Mother to convey that threat to Burke. Such a threat, given DeLay's prior history, which

5

includes abusive and violent behaviors toward Burke and having made death threats to Burke, would cause a reasonable person, as it did Burke, to experience substantial emotional distress.

DeLay's telephone call to Mother was followed, only two weeks later, by DeLay traveling from his residence in Sikeston to Charleston, where Burke resided, to attend a church, which he has not attended for many years, and sit directly behind Mother and Father near where Burke would regularly sit. The trial court could have reasonably inferred that he did so for the purpose of initiating contact of some nature with Burke. Appearing at the church's Sunday service and seating himself as he did, therefore, was not for a legitimate purpose because by doing so DeLay was violating the criminal case order prohibiting him from having any contact with Burke. Again, in light of DeLay's recent threat to Burke, communicated to Burke via his telephone call to Mother, and Burke's history with Delay's abusive and violent behaviors toward her, it was reasonable for Burke to experience substantial emotional distress upon seeing DeLay so seated inside the church.

Accordingly, the evidence below supports findings that (1) DeLay purposefully or knowingly engaged in a course of conduct, meaning two or more incidents, (2) that served no legitimate purpose, (3) that caused Burke to experience substantial emotional distress, and (4) that it was reasonable for Burke to experience substantial emotional distress. These findings support a full order of protection on the basis of harassment. *See* section 455.010(1)(d). Because this finding, standing alone, is sufficient to support the trial court's judgment, we need not consider whether the evidence supported a full order of protection under any alternative basis included in the trial court's judgment.

In contending that the evidence *did not* support a finding of harassment, DeLay argues that it was not his "intent" to alarm Burke and cause her distress, there was "no evidence"

6

supporting a finding that his actions caused *substantial* emotional distress, and that his actions were for legitimate purposes in that he called Mother "to make amends" and "[he] has been a member of the [church] since his childhood." These arguments, in contravention of our standard of review, ignore the facts and reasonable inferences supporting the judgment, *supra*, and rely on testimony from DeLay that the trial court was not required to accept as credible. *See **Binggeli**,* 300 S.W.3d at 623; ***Parkhurst**,* 793 S.W.2d at 636. For all the aforementioned reasons, therefore, DeLay's point is denied.

## Decision

The trial court's judgment of full order of protection is affirmed.


GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – concurs

WILLIAM W. FRANCIS, JR., J. – concurs

7