Craig RELLER, M.D., Appellant,

v.

Lori HAMLINE, Respondent.

No. WD 49571.

Missouri Court of Appeals,
Western District.

March 28, 1995.

David R. Browning, The Browning Group, Independence, for appellant.

Lloyd Koelker, Kansas City, guardian ad litem.

Lori Beth Hamline, Kansas City, pro se.

Before KENNEDY, P.J., and
LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

This case arises from an ex parte application for an order of protection pursuant to the Child Protection Orders Act, §§ 455.500–455.538 RSMo, (Cum.Supp.1994). Respondent, Lori Hamline (Mother) filed an application seeking an order of protection for her child, A.H., against Craig Reller (Appellant). Mother asserted in the application that she and the minor child resided at an address in Kansas City, Missouri, and that Mother and Appellant had previously had a dating relationship. The application further alleged Appellant "emotionally abused" her child by "stalking" him.

The pertinent facts reported by Mother in her application for the ex-parte order are as follows: Appellant came over to her house and told her son he (Appellant) could not continue to see him (son) because Mother would call the police on him. She said she had to call the police to convince him to leave. She complained that prior to changing her phone number, he would call demanding to talk to the son and she would have to leave the phone off the hook and this caused her son to cry.

Based on the information in the preceding paragraph, the court entered the ex-parte order of protection on behalf of child on May 20, 1994. The matter was set for trial on June 2, 1994.

At the trial, evidence was taken on appellant's motion to dismiss for lack of jurisdiction, and Mother testified that appellant was never a resident of her domicile. Appellant also testified to same. Nonetheless, the trial court made a specific finding that because Reller had been a frequent overnight guest of Mother, the court was vested with jurisdiction to proceed.

Facts surrounding the relationship between the parties are as follows: Mother and appellant had a physical relationship in 1993. Mother encouraged appellant to take on the duties of a father to child. Even after the physical relationship between Mother and Appellant ended, Mother actively encouraged Appellant to continue to see and have regular contact with child. In April 1994, Mother elected to terminate the relationship she had previously fostered between child and Appellant.

At trial, there were no witnesses or evidence other than the testimony of Mother and Appellant. Based on the facts in the application for the ex-parte order of protection and the testimony adduced at trial, the trial court found a clear case of emotional abuse of child by Appellant. The trial court then entered a full order of protection.

On appeal, appellant claims: 1) the trial court lacked jurisdiction to enter an order under the Child Protection Orders Act; and 2) even if the court could take jurisdiction, it erred by granting the order because Mother failed to make a prima facie case, as there was no evidence of emotional abuse presented at trial.

*I.*

■ Appellant first claims the trial court lacked jurisdiction to enter an order under the Child Protection Orders Act because he was not "a family household member," because he did not reside with Mother and child, as required by §§ 455.500–455.538 RSMO Cum.Supp.1994.

■ In reviewing this evidence, note the judgment of the trial court will be affirmed unless: there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Under § 455.501, for a child protective order to be issued, the child being protected must currently be abused by a present or former household member. Under § 455.501(2), an adult household member as "any person, 18 years of age or older, who **resides** with the child in the same dwelling unit."

The question this court is faced with is how to interpret and/or define the word "reside." Both parties testified at trial that appellant had not ever been a resident of Mother's household. Mother testified that, during their four month relationship, Appellant began to occasionally spend the night during the last two months of the relationship. She said he might have spent three nights a week during the latter part, but no more. Appellant's testimony mirrored Mother's, and both agreed that he never had an intention to leave his house, nor did he have possessions at her home.

So, the question now is whether or not an overnight social guest who, at the most, spent two or three nights with Mother, qualifies as a "resident" of Mother's household. This is certainly a question of first impression as to the Child Protection Orders Act. Therefore, this court first looks at the dictionaries' interpretations and definitions of "resident."

**1. Webster's Third International Dictionary, (1971)**

**a. Resident:** a person dwelling or having a home for a continued time; not moving.

**b. Residence:** a temporary or permanent dwelling place, abode, or habitation **to which one tends to return** as distinguished from a place of temporary sojourn or transient visit.

**c. Reside:** to dwell permanently or continuously; have a settled abode; have one's residence or domicile. De-

spite the fact that it is somewhat formal, may be **the preferred term for expressing the idea that a person keeps or returns to a particular dwelling place as his fixed, settled, or legal abode.**

**2. Black's Law Dictionary, Sixth Edition (1990)**

**a. Resident:** when used as a noun, means a dweller, habitant or occupant; it signifies one having a residence. *Hanson v. P.A. Peterson Home Assoc.,* 35 Ill.App.2d 134, 182 N.E.2d 237 (2d Dist.1962)

**b. Residence:** place where one actually lives or has a home; a person's dwelling place or place of habitation; an abode; house; where one's home is; a dwelling house. *Perez v. Health and Social Servs.,* 91 N.M. 334, 573 P.2d 689, 692 (NM App.1977)

**c. Reside:** to settle oneself or a thing in a place; to be stationed, to remain or stay, **to dwell permanently or continuously,** to have a settled abode; to have one's residence or domicile. *State ex rel Bowden v. Jensen,* 359 S.W.2d 343, 349 (Mo.1962)

Next, this court looks to Missouri case law to trace how Missouri has historically defined "resident." Because this is a question of first impression in the Child Protection Order Act context, the general definition of "resident" is found in the liability insurance context. In this context, courts were frequently asked to determine whether a person was covered under someone else's insurance policy covering "residents" of the primary insured's household.

In 1979, the Supreme Court of Missouri faced this question in *Cobb v. State Security Ins. Co.,* 576 S.W.2d 726, 737 (Mo. banc 1979). While acknowledging that it was difficult to formulate general principles in this area, the *Cobb* court set forth two examples for defining "resident." "One examines the length of time the parties intended to remain in the home and whether the arrangement is permanent or temporary ..., the other theory focuses on the functional character of the arrangement or whether the parties function as a family unit under one management." *Id.* at 738.

Citing *Cobb,* this court in *Countryside Cas. Co. v. McCormick,* 722 S.W.2d 655, 658 (Mo. App.1987), held that a person (in this case a minor child) was held to be a resident of father's household, although father was not the custodian, because:

1. the child was a minor

2. the father maintained residence for child (room, bathroom, etc.)

3. child had possessions there (clothes, toys)

4. there was substantial evidence that child spent more time with father at father's home than with custodial mother.

*Id.* at 658.

This court used both *Countryside* and *Cobb* in a case dealing with the resolution of "resident" for insurance coverage purposes, whether or not a 20 year old male was a "resident" of his mother or father. *American Family Mutual Ins. Co. v. Automobile Club Inter–Insurance Exch.,* 757 S.W.2d 304 (Mo.App.1988). The language of the father's insurance policy stated that one who "lives with" or "who lives in the household of" the insured, was considered a resident to be afforded coverage under the policy.

This court, citing the tests of *Countryside* and *Cobb,* respectively, held the young man was **not** a "resident" of the father's household. *Id.* at 306. The young man in *American Family* had moved out of father's home three weeks prior to the accident, and had moved his possessions out of the home. *Id.* The court found this was enough to establish an intent not to reside with father, **although, just three weeks prior, he had lived solely with father.** *Id.*

In the case at bar, we have a man who, inarguably, had not cohabited with Mother. In addition, both parties testified that he was not a resident, as they would define the word. He was, by all accounts, an overnight guest during the last two months of their relationship. Since the relationship ended, Appellant has not spent the night with Mother. Over a year passed between the termination of the dating relationship between

Mother and Appellant and the filing of the petition of this order.

Additionally, this court finds no evidence in the record that Appellant had any personal possessions such as a toothbrush, comb, articles of clothing, etc., at Mother's house. There is no evidence that he received mail at the address or spent more nights there than both parties testified. Both objectively and subjectively, the evidence and the testimony lend this court to hold, under *Cobb, Countryside,* and *American Family, supra,* Appellant was never, nor did he ever intend to be, a household resident of Mother's household. If a young man, as in *American Family, supra,* was not a resident of his father's home because he had not lived there for just three weeks (after living there his whole life), then Appellant's overnight visits, which terminated at least a year before this action was filed, simply are not enough to make him a "resident" (present or former) of Mother's household.

However, even if the above determination could be ·debated, the most decisive and important factors in this case were Mother's actions when she filed this order of protection. The jurisdictional part of a required petition for an order of protection under the Child Protection Orders Act appears as follows: (emphasis added)

3. Respondent is **(BOTH MUST BE CHECKED)**

___ At least eighteen years of age **and,**

___ A present or former **household member** of the child

As evidenced above, in order to have jurisdiction over the Respondent under the Act, both must be checked. However, Mother did not do this. Instead, she altered the application, crossing out the bolded words "household member." Instead, she wrote "had a dating relationship with respondent/with overnight visits." Her petition then looked like this: (emphasis added)

3. Respondent is **(BOTH MUST BE CHECKED)**

_x_ At least eighteen years of age **and,**

_x_ A present or former XXXXXXXXX XXXXXX of the child. (had a dating

relationship with respondent/with overnight visits)

By these very actions, Mother has admitted Appellant was not a household member. In addition, she has crossed out a mandatory jurisdiction requirement. The court erred when it took jurisdiction over Appellant and the matter when, on its face, the Act's jurisdictional requirements simply were not satisfied. The jurisdiction of the circuit court is defined by statutory provisions and letter of the law is the limit of its power. *Wells v. Noldon,* 679 S.W.2d 889 (Mo.App.1984); *see also Cullen v. Director of Revenue,* 804 S.W.2d 749 (Mo.1991).

Finally, this court holds that, although the paramount purpose of an Order of Protection is to serve the best interest of the child and is vitally necessary to protect children, **this specific** protection order simply may not be used to enjoin someone not meeting the act's own jurisdictional requirements.

The law affords many other causes of action and avenues for protecting a child not meeting the requirements of the Act, which is aimed only at protecting children from household members.

The point is granted.

## II.

■ Although this court need not reach the merits of this action, because the judgment is reversed on Point I, it is worth mentioning that this court believes the evidence in this case was not sufficient to support the trial court's finding of emotional abuse, which is Appellant's second point on appeal.

■ Albeit, there is no statutory definition of emotional abuse, but emotional abuse has ties to mental abuse. Missouri has long realized that mental deficiencies, problems or abuse may be established by the fact testimony of even lay witnesses describing the actions of the affected party. *Barnes v. Marshall,* 467 S.W.2d 70 (Mo.1971). Additionally, emotional abuse may be established by the expert testimony of a doctor or licensed psychologist, who by definition would deal in the diagnosis of emotional disorder or disability. §§ 337.015(3), 495.065 RSMo, (1986).

Nowhere in the record was any evidence presented to the trial court concerning any symptoms or diagnosis of emotional abuse. The trial court simply had no evidence, other than one line in Mother's petition for the order of protection which stated that the child had once "cried," on which to base its finding that contact between Appellant and the child had caused emotional abuse, or that continued contact would cause continued emotional abuse. The court is under an obligation to base its decision on the evidence presented at trial. *Murphy v. Carron*, 536 S.W.2d at 31. Here, not only was there no testimony of witness observation, but the court also had no available expert testimony upon which to base its decision. Therefore, jurisdiction aside, the finding of the trial court simply did not meet the standards of *Murphy*, supra.

Again, this court need not reverse on this point.

Judgment reversed.

All concur.