**Anika CIMA, Respondent,**

v.

**Shaloma FANSLER, Appellant.**

**No. WD 72702.**

Missouri Court of Appeals,
Western District.

July 26, 2011.

James T. Hensley, Jr., Kirksville, MO, for appellant.

Brenda R. Wall–Swedberg, Kirksville, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, JAMES M. SMART and JOSEPH M. ELLIS, Judges.

LISA WHITE HARDWICK, Chief Judge.

Shaloma Fansler appeals the Judgment and Full Order of Child Protection entered against her with regard to the minor child, C.C. Fansler contends the evidence was insufficient to prove the elements required for a child protection order pursuant to Sections 455.501 and 455.516.[1] For reasons explained herein, we find no error and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Anika Cima is the mother of five children, including a male child, C.C. She is divorced from Gary Cima, who is the father of C.C. and three of the other children.[2] Through a joint custody arrange-

---

1. All statutory references are to Revised Statutes of Missouri (2000) as updated by the Cumulative Supplement (2009) unless otherwise noted.

2. For ease of reference, Anika Cima and Gary Cima will be referred to by their first names. No disrespect is intended.

ment, the children generally reside with Anika on the weekdays and with Gary every other weekend during the school year. During the summer months, the children reside with Gary on the weekdays and with Anika every other weekend. Gary resides in a home with his girlfriend, Shaloma Fansler.

On February 23, 2010, Anika filed a Petition for Order of Child Protection against Fansler. The petition alleged that Fansler physically abused six-year old C.C. and severely bruised his lower back and bottom. The circuit court granted an Ex Parte Order of Child Protection and scheduled the matter for hearing on March 9, 2010.

At the hearing, Anika testified that on Sunday, January 24, 2010, she found C.C. in the bathroom with the door locked after he returned from a weekend custodial stay with Gary. C.C. started crying when he unlocked the door and said "it hurts when I poop." Anika saw several bruises on C.C.'s lower back and "all over his bottom." When asked how he got the bruises, C.C. said "I don't know."

Anika promptly notified police and then took C.C. to the hospital, where doctors recommended a SAFE examination based on the nature of the bruising. Frank Kinkhorst, a deputy with the Adair County Sheriff's Office, came to the hospital and photographed C.C.'s injuries. The next day, Anika and her children were interviewed by Deputy Kinkhorst and Kristen Toney, an investigator with the Adair County Children's Division ("Division").

Deputy Kinkhorst testified about the interview. He recalled that C.C. said Fansler spanked him with a wooden spoon that had a hole in it. The photographs of C.C.'s bruises were admitted into evidence at the hearing. Deputy Kinkhorst described the bruises as two-inch red marks that appeared on C.C.'s back, across his bottom, and on the right side of his bottom. The bruise on the right side was a large, circular pattern.

Toney also testified that she observed significant bruising on C.C. She was particularly concerned about two parallel bruise marks across the child's bottom.

Toney further testified that she interviewed Fansler and Gary during the investigation. Fansler said she had spanked C.C. on the Saturday night in question. Fansler admitted that she had spanked C.C. and the other children with plastic kitchen spoons in the past.

Fansler did not testify at the hearing. At the conclusion of the hearing, the circuit court entered a "Judgment/Full Order of Child Protection" against Fansler. The court made a finding that Anika "proved the allegations of abuse" pursuant to Section 455.516 RSMo. The judgment prohibited Fansler from having any contact with C.C. for a one-year period. Fansler appeals the judgment.

## STANDARD OF REVIEW

In this court-tried case, we must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We view the facts and reasonable inferences in a light most favorable to the judgment and must defer to the trial court's determination of witness credibility. *In the Interest of S.J.H.,* 124 S.W.3d 63, 66 (Mo.App.2004).

## ANALYSIS

Fansler brings two points on appeal, both challenging the sufficiency of the evidence to prove the statutory elements of a child protection order.

Pursuant to Section 455.516.1, the circuit court can issue a full order of protection if "the petitioner has proved the allegation of abuse of a child by a preponderance of the evidence." The statute defines the following relevant terms:

(1) **"Abuse"**, any physical injury ... inflicted on a child other than by accidental means by an adult household member, or stalking of a child. Discipline including spanking, administered in a reasonable manner shall not be construed to be abuse;

(2) **"Adult Household Member"**, any person eighteen years of age or older or an emancipated child who resides with the child in the same dwelling unit[.]

§ 455.501. Based on these statutes, a full order of protection for a child may be issued against a respondent who: (1) is over the age of eighteen; (2) resides in the same dwelling as the child; and (3) inflicted physical injury on the child under circumstances that did not involve an accident or reasonable discipline.

### Evidence of "Adult Household Member"

■ In her first point on appeal, Fansler contends the judgment must be reversed because the evidence was insufficient to prove that she was an "adult household member." Specifically, Fansler argues there was no evidence to establish that she was over the age of eighteen or that she resided in the same dwelling with C.C. Fansler also argues the lack of evidence on these statutory elements deprived the circuit court of jurisdiction to enter the child protection order.

We disagree that this point raises a "jurisdictional" issue, given the Supreme Court's explanation of that concept in *J.C.W. v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009). Missouri recognizes only two types of circuit court jurisdiction based on

constitutional principles: personal and subject matter jurisdiction. *Id.* at 252. Here, Fansler does not challenge personal jurisdiction, and it is beyond dispute that the circuit court had jurisdiction over the subject matter of this civil action pursuant to Article V, section 14 of the Missouri Constitution. Fansler claims only that the circuit court lacked *statutory authority* to enter the child protection order due to insufficient evidence. Accordingly, the court's jurisdiction is not at issue.

Fansler relies on *Chavez v. Walters*, 78 S.W.3d 234 (Mo.App.2002) and *Reller v. Hamline*, 895 S.W.2d 659 (Mo.App.1995), in arguing that the judgment must be reversed because Anika failed to prove the statutory elements required for a child protection order. We find neither case applicable. In both *Chavez* and *Reller*, the courts concluded the petitioner was not entitled to relief because the petition failed to *allege* that the respondent was "a present or former household member of the child" as required by Sections 455.501(2) and 455.505(1), RSMo.2000 and 1994. *Chavez*, 78 S.W.3d at 237–38; *Reller*, 895 S.W.2d at 662. The orders of protection were denied because the petition was facially defective and not due to a failure of proof.

Here, Anika filed a petition alleging that Fansler was "24–26" years old and that she resided in a home with C.C. These facts were sufficient to make a threshold allegation that Fansler was an "adult household member" as defined in Section 455.501(2). Unlike *Chavez* and *Reller*, the petition in this case properly stated a claim for relief under the child protection order statutes.

In addition to the allegations in the petition, the record further indicates the circuit court had information regarding Fansler's age. The Ex Parte Order of Protection and the Judgment/Full Order

of Protection listed Fansler's birth date as January 8, 1986, thereby indicating that she was 24 years old at the time the court entered the orders. The source of the information is unclear, but Fansler has never disputed the accuracy of the court's findings regarding her age. Although Fansler did not testify at the hearing, she was present in the courtroom, and the court was able to observe whether she appeared to be over the age of eighteen. Under these circumstances, we find no error in the court's determination that Fansler met the age requirement for being an "adult household member."

Fansler also argues the evidence failed to establish that she "resided" in the same dwelling with C.C. Pursuant to the custody agreement in effect at the time of the alleged abuse, C.C. spent overnights at his mother's home during the school week and at his father's home on Wednesdays and every other weekend. Fansler contends C.C. did not "reside" with her at his father's home because the child spent most of the time at his mother's home.

Fansler again relies on *Reller*, which is not analogous to the facts here. In *Reller*, 895 S.W.2d at 660–61, the court considered whether a man was a resident of a woman's home where he had spent two or three nights during a brief four-month "physical relationship." The court concluded the man was merely an overnight guest and not a "resident" of the home because there was no evidence that he kept personal possessions there ("such as a toothbrush, comb, articles of clothing, etc.") or received mail at the woman's address. *Id.* at 661–62. This situation cannot be fairly compared to the custody arrangement for six-year old C.C., whereby he had regularly scheduled overnight stays in the homes of both of his parents on a continuous basis.

Although factually distinguished, *Reller* appears to the only child protection order case where the concept of residency has been discussed under Missouri law. However, the discussion regarding residency issues in an insurance case, *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655 (Mo.App.1987), is helpful in the context of this case. In *Countryside*, the court held that a child with separated parents could have two separate residences. *Id.* at 659. The court established a standard for determining whether a child can be considered a resident of the home of a non-custodial parent:

> Even when custody has been awarded, however, a child may still be deemed an insured under the other parent's insurance if the insured parent can show either (1) that there are periods of residence with both parents or (2) that the non-resident parent provides substantial support of the child and the home where the child resides. Evidence of either of these factors may be sufficient to warrant the determination that a child continues to be a resident of the insured parent's household.

*Id.* at 657 (quoting Widiss, Uninsured and Underinsured Motorist Insurance, Second Ed., Vol. 1, Section 4.13).

The issue of residence is a question of fact. *Id.* at 658. The facts presented here are sufficient to meet the first test of residency in *Countryside*, as C.C. had periods of residency with both parents. The testimony indicated that Anika and Gary are divorced and have a custody arrangement whereby C.C. spends most of the school weekdays with his mother and Wednesdays and every other weekend with his father. The schedule is switched during the summer months, with C.C. spending most of the weekdays at Gary's home and Wednesdays and every other weekend with Anika. Gary and Anika also evenly

divide parenting time with C.C. on the holidays. The evidence established that C.C. spends regular periods of residential time with both of his parents. Because it is possible for a child to have two residences, the record supports a finding that C.C. resided with his father and, therefore, in the same dwelling as Fansler.

We find no error in the circuit court's determination that Fansler was an "adult household member," as defined in Section 455.501(2), based on evidence that she was over the age of eighteen and resided in the same dwelling with C.C. Point I is denied.

### Evidence of Abuse

■ In Point II, Fansler contends the judgment must be reversed because the evidence was insufficient to prove that she abused C.C. by spanking him. Section 455.501(2) defines abuse as "any physical injury . . . inflicted on a child other than by accidental means by an adult household member[.] Discipline including spanking, done in a reasonable manner shall not be construed to be abuse." Fansler argues the evidence did not establish that the spanking caused physical injury to C.C. or that the spanking was done in an unreasonable manner.

Viewed in a light most favorable to the judgment, the testimony of Anika, Deputy Kinkhorst, and Kristin Toney provided substantial evidence regarding the spanking incident and its consequences. Anika testified that C.C. locked himself in the bathroom on January 24, 2010, after returning from a weekend custodial stay with his father and Fansler. When C.C. opened the door, he was crying and complained that "it hurts when I poop." Anika then saw several bruises on C.C.'s lower back and "all over his bottom." C.C. did not have the bruises before he spent the residential time at his father's home. Anika notified police and took C.C. to the hospital, where doctors were concerned enough about the bruising to refer the child for a SAFE examination.

Deputy Kinkhorst took photographs of the bruises at the hospital and then interviewed C.C. with Division investigator Kristin Toney the next day. C.C. reported that Fansler had spanked him with a spoon that had a hole in it. Kinkhorst described the bruises as two-inch red marks that were spread across C.C.'s back and bottom. Kinkhorst noticed that one of the bruises on the right side of C.C.'s bottom was a large circular pattern, consistent with a spoon mark. Toney also testified that she observed "significant" bruising on C.C.'s bottom.

Fansler admitted to Toney that she had spanked Gary's children with a spoon in the past. She also admitted to spanking C.C. on January 23, 2010, during his weekend stay at his father's home. The spanking occurred on the weekend that C.C. returned to his mother's home with substantial bruising on his body. C.C. was still in pain more than twenty-four hours after the spanking occurred. His bruises remained starkly visible for at least forty-eight hours after the spanking.

The testimony regarding C.C.'s complaints of pain and the extent of his photographed bruises was sufficient to prove that the child suffered physical injury as result of the spanking by Fansler. The fact that C.C. continued to suffer pain and had obvious signs of bruising for more than twenty-four hours also supports a finding that the spanking was not done in a reasonable manner. Accordingly, the circuit court did not err in determining that the spanking constituted "abuse," as defined by Section 455.501(2), and warranted the issuance of a Full Order of Protection against Fansler. Point II is denied.

## CONCLUSION

We affirm the circuit court's judgment.

ALL CONCUR.