

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| C.L., | ) | |
| | ) | |
| Respondent, | ) | WD79007 |
| | ) | |
| v. | ) | OPINION FILED: August 9, 2016 |
| | ) | |
| KENNETH WAYNE HARTL, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable S. Margene Burnett, Judge

Before Division Two: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

Appellant, Kenneth Wayne Hartl ("Hartl"), appeals from the judgment of the

Circuit Court of Jackson Country granting a full order of protection to Respondent, C.L.

("C.L.")[1]. In his sole point on appeal, Hartl argues that the circuit court erred in granting

the order because C.L. failed to prove, by a preponderance of the evidence, that Hartl's

actions constituted domestic violence or stalking. We affirm.

---

[1] Pursuant to section 566.226, we refer to respondent by initials to protect her identity.

## Factual and Procedural History[2]

After dating since 2011, C.L. moved out of her shared residence with Hartl on March 7, 2015. A few weeks later, on April 17, C.L. informed Hartl, in person, that she was "done" with their relationship, and blocked his number on her phone. Three days later, on April 20, Hartl showed up at C.L.'s house, parked in her driveway, blocked her car in so she could not leave, and insisted they talk. For the next month, C.L. and Hartl tried, and failed, to make the relationship work by attending counseling together. C.L. once again told Hartl that she did not want to have any contact with him. After that, on May 22, C.L. opened the door to her home to let her dog in, at which time Hartl "lunge[d] around, pulled the door open, force[d] his way in and grabbed my hand up." She was able to get away from his grasp and out onto the deck. She told him to get off her property and that the relationship was done.

The following incidents occurred in the subsequent two months:

- May 22 - 28: C.L. parked behind a neighbor's house, climbed over the back fence, and snuck in and out of her back door to make it appear that she was not home.

- Neighbors reported that they saw Hartl's car drive by C.L.'s residence multiple times.

---

[2] On appeal from a bench trial, an appellate court views the facts in the light most favorable to the trial court's judgment. *Sauvain v. Acceptance Indem. Ins. Co.,* 437 S.W.3d 296, 302 n2 (Mo. App. W.D. 2014).

- June 11: Hartl knocked on C.L.'s door for thirty minutes while talking loudly to her through the door. He called her twice leaving voicemails, and parked his car blocking her driveway prevented C.L. from leaving in her car.

- June 13: C.L. saw Hartl drive by her house "about ten times."

- June 15: Hartl called C.L. and left a voicemail.

- June 16: Hartl called C.L. and left a voicemail.

- June 18: Hartl showed up, uninvited, to the funeral and graveside services of C.L.'s mother, and continually asked C.L. to talk. Later that night, he drove by her house twice.

- June 19: C.L. received a three page letter from Hartl discussing "how [their] life could be together," as well has informing her that he bought them concert tickets together for a concert in July. Hartl also called C.L. and left a voicemail.

- June 20: Hartl drove in front of C.L.'s house.

- June 24: Hartl knocked on C.L.'s door for seven minutes. She introduced a time stamped photo of his car in the neighbor's driveway and a recording on her phone of him talking at her door, as well as a voicemail from that day.

- June 26: Hartl drove past C.L.'s home twice in the morning. He was later seen driving on a street parallel to a friend's house that C.L. was visiting. The street is not a main street through town.

- June 27: Hartl forced his way into C.L.'s home, "pushing [her] back against the wall, grabbing [her] hands with one hand at [her] wrist." As she attempted to run out of the back of the house, she tried to push the burglar button on her alarm system. The button did not work so she called the police, who took a report.

- June 28: C.L. received a phone call from a neighbor informing her that Hartl had driven by her house twice in the morning. C.L. also saw Hartl drive by her house later that night.

On June 30, 2015, C.L. filed a petition seeking an Order of Protection against Hartl in the Circuit Court of Jackson County. An ex parte order of protection was issued pending a hearing. A bench trial occurred on August 12, 2015. The circuit court granted C.L. the full order of protection, stating that "[d]espite the fact there has not been verbal threats, there has been enough physical contact and repeated physical contact to the petitioner that her fear is a reasonable fear." Hartl appeals.

## Standard of Review

"The appellate court will sustain the trial court's order unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Wallace v. Van Pelt*, 969 S.W.2d 380, 382 (Mo. App. W.D. 1998). This court gives deference to the circuit court's findings of credibility, and only considers those facts and reasonable inferences therefrom supporting the decision. *Id.* at 383. "Because the trial judge is in the best position to gauge the credibility of the witnesses, in

4

cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded." *Id.*

## Discussion

In his sole point on appeal, Hartl argues that an order of protection cannot be granted because C.L. "failed to prove by a preponderance of the evidence that [Hartl's] actions constituted domestic violence . . . or 'stalking.'. . . because [she] testified that [Hartl] never abused her or placed her in fear for her safety and she was not actually in fear for her safety."

"Any person who has been subject to domestic violence by a present or former family or household member, or who has been the victim of stalking or sexual assault, may seek relief . . . by filing a verified petition alleging such domestic violence, stalking or sexual assault by the respondent." Section 455.020.1[3]. "[I]f the petitioner has proved the allegation of domestic violence, stalking, or sexual assault by a *preponderance of the evidence*, and the respondent cannot show that his or her actions alleged to constitute abuse were otherwise justified under the law, the court shall issue a full order of protection [ . . . .]" Section 455.040 (emphasis added). "'Preponderance of the evidence' is defined as that degree of evidence that 'is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows the fact to be proved to be more probable than not.'" *Suhr v. Okorn*, 83 S.W.3d 119, 121 (Mo. App. W.D. 2002) (quoting *State Bd. Of Nursing v. Berry*, 32 S.W.3d 638, 642 (Mo. App. W.D. 2000)).

---

[3] All statutory references are to RSMo 2000 cumulative as currently supplemented, unless otherwise noted.

5

There are multiple ways to obtain an order of protection under the Adult Abuse Act. According to the statute, "domestic violence" occurs when "abuse or stalking [is] committed by a family or household member [ . . . . ]" Section 455.010.5.[4] A number of actions constitute the term "abuse," which includes, but is not limited to: assault and harassment. Section 455.010.1. "Assault" is defined as "purposely or knowingly placing or attempting to place another in fear of physical harm." Section 455.010.1(a). "Stalking" is defined by statute as "when any person purposely engages in an unwanted course of conduct that causes alarm to another person . . . [and] when it is reasonable in that person's situation to have been alarmed by the conduct." Section 455.010.14. The term "alarm" is defined as to "cause fear of danger of physical harm." Section 455.010.14(a). Unlike harassment, the petitioner does not have to be personally alarmed, and only needs to show that a reasonable person would be alarmed. Section 455.101(1)(d); *See Patterson v. Pilot*, 399 S.W.3d 889, 895 (Mo. App. S.D. 2013). The unwanted behavior must be repeated "over a period of time, however short, [and] serves no legitimate purpose." Section 455.010(14)(b). "For conduct to have 'no legitimate purpose,' it must be found to be not sanctioned by law or custom, to be unlawful, or not allowed." *Lawyer v. Fino*, 459 S.W.3d 528, 533 (Mo. App. S.D. 2015) (citation omitted).

In his sole point on appeal, Hartl argues that the order of protection should not have been granted because C.L. failed to prove she was in fear for her physical safety. Assault and stalking both require a fear of physical safety. Hartl bases his entire

---

[4] A "household member" is considered, among other things, a person or persons "who are presently residing together or have resided together in the past, any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim." Section 455.010.7.

argument on a single statement made by C.L. during her testimony. When asked about the June 11 incident,[5] C.L. stated that "[she] felt safe herself, but [she] was just mad." Therefore, Hartl claims that this proves C.L. was not in fear for her physical safety.

We disagree. C.L. presented sufficient evidence from which the trial court could find by a preponderance of the evidence that she was a victim of stalking. C.L.'s statement that she "felt safe" is limited because it references only one incident during which no physical contact occurred. Further, right before testifying that she felt safe and was mad on that particular occasion, C.L. testified that this was because her alarm was set and her dog was next to her; therefore, the statement is even further limited. These preventive actions suggest that C.L. was actually fearful about the situation, and acted in a way that a reasonable person would to attempt to protect herself from such a threat. Moreover, this was not the first time Hartl had tried to enter C.L.'s home without permission. On May 22, Hartl lunged into her home without warning or permission as he grabbed her hand. The fact that she was taking precautionary measures to prevent another break in does not equate to the conclusion that she was not in fear or that a reasonable person would not be in fear.

Following the June 11 incident, on June 27, Hartl forced his way into her home *again* while grabbing her wrist, where she "started to run out the back of the house knowing [she] couldn't get [her] phone or anything." On her way out she tried to push the burglar alarm button to alert the police. However, she did not push hard enough and, when Hartl left, she called the police and made a police report. These incidents, coupled

---

[5] On June 11, Hartl knocked on C.L.'s door for thirty minutes while trying to talk to her.

with the repeated unwanted calls, voicemails, drivebys, and the unexpected appearance at her mom's funeral, are sufficient evidence from which the trial court could find that Hartl's actions caused C.L. to fear physical harm and that a reasonable person would have experienced such fear. We find that Hartl's actions amounted to stalking. Further, the same actions also establish that Hartl was guilty of "abuse" of the victim, as he assaulted her by grabbing her arm on at least two occasions and unlawfully entering her home. Therefore, we find that the trial court did not error in granting C.L. a full order of protection.[6]

The point is denied.[7]

## Conclusion

The judgment of the Circuit Court is affirmed.

_____
Gary D. Witt, Judge

All concur

---

[6] Hartl's action would also fall within the statutory definition of "harassment," which is "engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult or child and serves no legitimate purpose." Section 455.010.1(d). However, we do not need to reach this issue based upon the discussion above.

[7] The fact that Hartl fails to even recognize the fear that he placed C.L. in as a result of his actions is further proof of the need for the Adult Abuse Act.

8